UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-22431-Civ-COOKE/TORRES

DELORIS WELLS,

    Plaintiff,

vs.

MIAMI DADE COUNTY, a Florida
for profit corporation d/b/a MIAMI
DADE TRANSIT AUTHORITY,

    Defendant.
_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 US.C. § 2000, *et seq.* ("Title VII"), Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"), and common law. I have jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Plaintiff Deloris Wells alleges Defendant Miami Dade County ("County") discriminated against her because she is black. Specifically, she alleges she was the victim of: (1) Title VII/FCRA discrimination (ECF No. 1 ¶¶ 36-42) and/or retaliation (*Id.* ¶¶ 49-56); (2) disparate treatment/failure to promote (*Id.* ¶¶ 43-48); and (3) intentional infliction of emotional distress (*Id.* ¶¶ 57-66).

Pending is Defendant's Motion for Summary Judgment. (ECF No. 44). For the reasons that follow, I grant the Motion.

### BACKGROUND[1]

Wells has worked for thirteen years at the County's Department of Transportation and Public Works ("Transit Department"). (ECF No. 43 ¶ 1). On May 14, 2008, she accepted a promotion from driver messenger to Personnel Technician. (*Id.* ¶ 2; ECF No. 48 at 2). At that time, she began working in the Payroll and Benefits area. (ECF No. 43 ¶ 3). Kelly Lau became

---

[1] Plaintiff did not file a statement controverting Defendant's Statement of Material Facts (ECF No. 43). I therefore deem admitted the material facts set forth in Defendant's Statement to the extent the record supports them. *See* S.D. Fla. Local Rule 56.1; *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1330 (S.D. Fla. 2012) ("Because Plaintiff did not contradict Defendant's statement of undisputed material facts and because Defendant's statements are supported by evidence in the record, the facts alleged in the Defendant's statement are deemed admitted.").

Wells' supervisor. (*Id.* ¶ 4). Lau had been one of the three people on the panel that interviewed Wells for the Personnel Technician position. (*Id.* ¶ 5).

Eventually, Marlene George replaced Lau as Wells' supervisor. (*Id.* ¶ 7). Later, Kepler Louis replaced George. (*Id.* ¶ 8). Louis gave Wells an overall "Satisfactory" for her Employee Performance Evaluation covering the period from November 14, 2011 to November 13, 2012. (*Id.* ¶ 11). Wells received a merit pay increase as a result of that evaluation. (*Id.* ¶ 12). Louis gave Wells another "Satisfactory" for her Employee Performance Evaluation covering the period from November 12, 2012 to November 11, 2013. (*Id.* ¶ 13). As a result, Wells received another merit pay increase. (*Id.* ¶ 14).

Wells has not alleged incidents of discrimination or violation of her rights under Title VII during the time she was reporting to Lau, George and Louis. (*Id.* ¶ 9).

In 2013, Eva Quattrocchi replaced Louis as Wells' supervisor. (*Id.* ¶ 10). Quattrocchi gave Wells an overall "Satisfactory" for her Employee Performance Evaluation covering the period from November 11, 2013 to November 9, 2014. (*Id.* ¶ 15). As before, that evaluation resulted in a merit pay increase. (*Id.* ¶ 16). James Flynn, the Division Chief of Human Resources when Quattrocchi supervised Wells, concurred with each of the Employee Performance Evaluations.[2] (*Id.* ¶¶ 17-18).

Five other people work in Payroll and Benefits under Quattrocchi's supervision: Angela Swanson-Edwards, Angela Williams, Kepler Louis, Wanda Calhoun and Maria Gonzalez. (*Id.* ¶ 20). Quattrocchi did not supervise any other employees. (*Id.* ¶ 21). Swanson-Edwards is black; Williams is black; Louis is black; Calhoun is black; and Gonzalez is white/Hispanic. (*Id.* ¶ 22). The only other Personnel Technicians are Williams, Calhoun and Diana Martinez. (*Id.* ¶ 23). Swanson-Edwards also worked as a Personnel Technician before her promotion to Clerk 4 in 2015. (*Id.*). Martinez works in Recruitment, under a different supervisor. (*Id.* ¶ 24). Wells does not recall anyone else working as a Personnel Technician during the eight years that she has held the position. (*Id.* ¶ 26).

Since May 2007, the County has accepted applications for employment exclusively though its online employment application site. (*Id.* ¶ 27). The site identifies each job opening by a Job ID number. (*Id.* ¶¶ 30, 54). County procedures require applicants, including County employees, to apply for the specific job opening they seek. (*Id.* ¶ 28). In 2014, Wells applied for a Personnel Specialist 2, Job ID #20289 position ("#20289 position"). (*Id.* ¶ 30). Six

---

[2] Wells never formally complained about her Employee Performance Evaluations. (ECF 43 ¶ 19).

candidates interviewed for that job. (*Id.* ¶ 31). The three-member interview panel asked each interviewee the same questions, which consisted of four general questions, one overall assessment question, and a written assignment. (*Id.* ¶ 32). Each panel member scored the interviewee, and the average of those scores determined the interviewee's final score. (*Id.* ¶ 33).

Lau, Sonya Sealy and Orlando Aleman interviewed Wells and five others for the #20289 position in February 2014. (*Id.* ¶ 34). Wells does not know how or why the panel selected her for an interview or how many other people interviewed for the position. (*Id.* ¶ 35). After the panel's questioning, Wells' average score (35) was lower than four of the other candidates. (*Id.* ¶ 36).

On February 19, 2014, Lau sent Flynn a Selection Memorandum for the #20289 position, requesting that the person with the highest average score (48), Lezavia Baker, receive an offer. (*Id.* ¶ 37). Lau alternatively requested that Flynn offer the position to the person with the second highest score (47), Jacqueline Davis, if Baker declined the position or if additional vacancies occurred. (*Id.* ¶ 38). In the end, the County cancelled the position, so no one got the job. (*Id.* ¶ 39).

Wells did not interview for any other positions in 2014. (*Id.* ¶ 40).

During discovery, Wells produced a chain of emails which she claims she found on a copy machine. (*Id.* ¶ 41). The emails were between Erica Thomas, a Personnel Specialist 2 in the Transit Department, and Judith Deutsch, a Recruitment Specialist in the Miami-Dade County Human Resources Department. (*Id.* ¶ 42). They show that on March 14, 2014, Thomas asked Deutsch which applicants had qualified for the #20289 position. (*Id.* ¶ 43). A few hours later, Deutsch responded, "This [position] was canceled!" (*Id.* ¶ 44). When Wells asked Thomas about the position after seeing the emails, Thomas told her that "the manager" decided to reclassify the position. (*Id.* ¶ 45). Wells never spoke to Deutsch about the email or asked anyone what it meant when a position was reclassified, but she speculated "it was just closed out and [they] decided to do something else with it." (*Id.* ¶¶ 46-47).

Wells also produced a Vacancy Report for Full-Time/Part-Time Positions ("Vacancy Report"), dated April 28, 2014, which she claims she found on a copy machine as well. (*Id.* ¶¶ 49, 50). The Vacancy Report lists the positions that are vacant in various divisions with the Transit Department. (*Id.* ¶ 51). According to the Vacancy Report, Human Resources had one Personnel Specialist 2 position pending to "interview applicants qualified by County HR" as of April 21, 2014. (*Id.* ¶ 52). When she asked Thomas about the position, Thomas told her she

3

did not have enough professional experience to qualify. (ECF No. 43-2 at 26). On October 31, 2014, Lau sent Flynn a Selection Memorandum for a Personnel Specialist 2, Job ID #30181 position ("#30181 position") requesting that he offer it to Jose Murillo, the person with the highest average score (40.13). (ECF No. 43 ¶ 54). Wells had not submitted an application for the #30181 position. (*Id.* ¶ 55).

On March 10, 2015, Wells filed a Charge of Discrimination ("EEOC Charge") with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against based on her race.[3] (*Id.* ¶ 68). She believes that her race motivated the alleged discrimination because "they had no African-American people working in the Office of Civil Rights and Labor Relations in the Disciplinary Unit" and she is "a black African-American female." (*Id.* ¶ 69).

Wells completed an Intake Questionnaire the same day she visited the EEOC office. (*Id.* ¶ 70). In it, Wells identified Flynn as the person responsible for discrimination because he denied her a position and hired a Hispanic male instead. (*Id.* ¶ 71). Wells acknowledged, however, that she "was not considered qualified via resume." (*Id.* ¶ 74). The EEOC issued a Notice of Right to Sue terminating its processing of the EEOC Charge on March 31, 2015. (*Id.* ¶ 75).

On June 29, 2015, she filed her Complaint against the County. (*Id.* ¶ 76). In it, and in her Response to the County's Motion, she points to ten alleged facts that evidence her "regular" mistreatment:

1. "Eva Quatrocchi and Jay Flynn started to scrutinize document [sic] and Plaintiff's time sheet as to when Plaintiff arrives at work and leaves at the end of the day." (ECF No. 48 ¶ 3(a); ECF 1 ¶ 24(a)).

2. "Eva Quatrocchi and Jay Flynn constantly record the Plaintiff''s visits to the restroom." (ECF No. 48 ¶ 3(b); ECF 1 ¶ 24(b)).

3. "Eva Quatrocchi and Jay Flynn constantly recording the time the Plaintiff eat [sic] on her lunch breaks." (ECF No. 48 ¶ 3(c); ECF 1 ¶ 24(c)).

---

[3] Wells filed just one internal complaint about her alleged mistreatment. (ECF No. 43 ¶ 54). On September 12, 2013, she complained to the County's Office of Human Rights and Fair Employment Practices ("OHRFEP") that Flynn subjected her to "retaliation," but she did not specify that she believed her alleged mistreatment related to her race. (*Id.* ¶¶ 61-63). OHRFEP told her that her concerns did not implicate a protected class and the matter progressed no further. (*Id.* ¶ 67).

4. "Eva Quatrocchi and Jay Flynn monitored and record [sic] each time the plaintiff took the 15 minutes break in the mornings and afternoons." (ECF No. 48 ¶ 3(d); ECF 1 ¶ 24(d)).

5. "Jay Flynn and Eva Quatrocchi on several occasions arbitrarily changed previously approved leave slips without informing the Plaintiff." (ECF No. 48 ¶ 3(e); ECF 1 ¶ 25).

6. "Eva Quatrocchi and Jay Flynn fail to approve the Plaintiff [sic] Family and Medical Leave Action (FMLA) request." (ECF No. 48 ¶ 3(f); ECF 1 ¶ 26).

7. "Eva Quatrocchi and Jay Flynn repeatedly reported the Plaintiff for being late or leaving work early." (ECF No. 48 ¶ 3(g); ECF 1 ¶ 27).

8. "Also a supervisor Kepler acting under the direction of Jay Flynn constantly surveyed and followed the Plaintiff around the work place." (ECF No. 48 ¶ 3(h); ECF 1 ¶ 34).

9. Because of the increased scrutiny, "Jay Flynn also prevented the Plaintiff from carrying out her duties as a Shop Stewart." (ECF No. 48 ¶ 3(i); ECF 1 ¶ 35).

10. The County "failed to evaluate the [P]laintiff [sic] performance in four (4) years." (ECF No. 1  45).

## STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed

a material issue of fact that precludes summary judgment." *Id.*

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

Wells alleges she was the victim of: (1) discrimination and/or retaliation; (2) disparate treatment/failure to promote; and (3) intentional infliction of emotional distress. I address each allegation in turn.[4]

### I. Discrimination and/or Retaliation

Because Wells' bases her discrimination and retaliation claims on circumstantial evidence, I apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Maynard v. Bd. of Regents of Univ. of Florida Dep't of Educ. ex rel. Univ. of South Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003).

To make out a prima facie case of discrimination under Title VII, Wells must show: (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). If she fails to satisfy

---

[4] "Because the FCRA is patterned after Title VII, 'federal case law on Title VII applies to FCRA claims.'" *Blackmon v. Wal-Mart Stores East, L.P.*, 358 F. App'x 101, 102 (11th Cir. 2009) (quoting *Guess v. City of Miramar*, 889 So. 2d 840, 846 n.2 (Fla. Ct. App. 2005)).

any element of her prima facie case, summary judgment is appropriate.[5] *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998).

Title VII also prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e–3(a). A prima facie case of retaliation requires the plaintiff to show: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

The standard in this circuit for both discrimination and retaliation claims requires an employee to establish an "ultimate employment decision" or make some other showing of substantiality in the employment context in order to establish an adverse employment action. *See Stavropoulos v. Firestone*, 361 F.3d 610, 616–17 (11th Cir. 2004); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The Eleventh Circuit has defined ultimate employment decisions as those "such as termination, failure to hire, or demotion." *Stavropoulo*s, 361 F.3d at 617. Conduct falling short of an ultimate employment decision must, in some substantial way, constitute "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action. *Id.*; *see Stavropoulos*, 361 F.3d at 617; *Gupta*, 212 F.3d at 588.

Here, Wells does not come close to establishing that she suffered an adverse employment action. The gravamen of her argument on that point is that: (1) she did not receive an employment evaluation for four years, which deprived her of merit pay increases; and (2) Quatrocchi and Flynn subjected her to increased supervision compared to her coworkers by scrutinizing her daily timesheet, reprimanding her for being tardy, documenting her bathroom

---

[5] If Wells could establish her prima facie case for discrimination and/or retaliation – which, as discussed herein, she cannot – the burden would then shift to the County to present legitimate, nondiscriminatory reasons for its actions. *See Donnelon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986). If the Country successfully carried that burden, Wells would need to show the County's reasons were pretext for unlawful discrimination. *See id.*

breaks, etc.[6] *See* ECF Nos. 1, 48.

First, Wells filed a union grievance regarding her failure to receive annual performance evaluations. (ECF No. 43-2 at 216). She testified that the "grievance had been taken care of" with her being "paid a lump sum of money for my performance evaluation." (*Id.*). Having elected to raise the issue through the grievance process, Wells cannot do so in this case. *See, e.g.*, *City of Miami Springs v. Barad*, 448 So. 2d 510, 511 (Fla. Ct. App. 1983).

Second, Wells cites no caselaw to support the proposition that increased supervision, without more, can constitute an adverse employment action. Indeed, there is significant authority to the contrary. *See Diaz v. AIG Mktg., Inc.*, 396 F. App'x 664 (11th Cir. 2010) ("[C]hanges to an employee's work assignments are rarely sufficiently adverse to warrant scrutiny under the anti-discrimination laws."); *Harris v. Firstar Bank Milwaukee*, 97 F. App'x. 662, 665 (7th Cir. 2004) (intimidating comments, dirty looks, and increased scrutiny by supervisors not adverse actions by employer); *Poppy v. City of Wiloughby Hills*, 96 F. App'x. 292, 295 (6th Cir. 2004) (supervisor "reviewing [plainftiff's] time sheets, requesting keys to her office to inspect records kept there, or installing a security camera in the hall outside her office" not adverse employment actions); *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999) (stripping of discretionary authority and moving office closer to supervisor not adverse employment actions); *McGuire v. Miami-Dade Cty.*, 418 F. Supp. 2d 1354, 1361 (S.D. Fla. 2006) (issuance of a Record of Counseling not adverse employment action)

Accordingly, absent an adverse employment action, Wells' discrimination[7] and

---

[6] Wells bases her claims also on Quatrocchi and Flynn allegedly not giving her FMLA leave when she requested it. Wells does not, however, allege facts sufficient to support such claim. For example, she does not allege that she had an FMLA-qualifying condition. *See Strickland v. Water Works and Sewer Board*, 239 F.3d 1199, 1203 (11th Cir. 2001) (FMLA plaintiff must allege a "serious health condition").

[7] Wells' discrimination claim lacks merit also because she has not identified a similarly situated, non-Black employee who received more favorable treatment than she received. "If a plaintiff fails to show the existence of a similarly situated employee [who received more favorable treatment], summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

retaliation[8] claims fail.[9]

## II. Disparate Treatment/Failure to Promote

To establish a prima facie case of discrimination in promotion, Wells must prove: (1) she is a member of a protected minority; (2) she was qualified for and applied for the promotion; (3) she did not receive the promotion despite her qualifications; and (4) her employer promoted other equally or less qualified employees who were not members of the protected minority. *See Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988).

Wells cannot establish a claim for discriminatory failure to promote because she either was not qualified for, or did not apply for, the #20289 and #30181 positions. Even if the #20289 position had not been cancelled, Wells would not have received it because her interview score ranked fifth out of six candidates. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013) (plaintiff must satisfy employer's "objective qualifications" to make out prima facie failure-to-promote case). As for the #30181 position, Wells never applied for it, so the County's decision not to promote her is not actionable. *See Giles v. BellSouth Tellecom., Inc.*, 542 F. App'x 756, 760-61 (11th Cir. 2013) ("Generally, a plaintiff cannot claim an employer discriminatorily failed to give a promotion when the employee never applied for the position.").

## III. Intentional Infliction of Emotional Distress ("IIED")

The State of Florida and its subsidiaries (including the County) are generally immune from tort liability. *See* Fla. Const. art. X § 13. Even taking Wells' allegations as true, the County is not liable for acts an employee "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* Fla. Stat. § 768.28(9)(a). Florida courts have "long recognized" that section 768.28(9)(a)

---

[8] Wells' retaliation claim is flawed also because she did not engage in a protected activity. Wells complained internally that she had "been treated unfairly by Mr. Jay Flynn" without explaining why she thought he was mistreating her. (ECF No. 43-11). "Unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995). Wells' conclusory allegations of racial discrimination do not suffice. *See id.*

[9] To the extent Wells bases her claims on a "hostile work environment" theory, she has not shown her alleged mistreatment was so "severe or pervasive" as to warrant recovery. *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (laying out standard); *see Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) (supervisor's deferral of recommended promotions not sufficient); *Farid v. Postmaster Gen.*, 625 F. App'x 449, 452 (11th Cir. 2015) ("sporadic and isolated" incidents not sufficient).

bars claims for IIED against the State and its subdivisions. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015); *see also Tillman v. Orange County, Fla.*, 519 F. App'x 632, 636 (11th Cir. 2013) (affirming dismissal of IIED claims against sheriff's office because, "[a] government entity cannot be liable for the willful and wanton actions of its employees"). Wells' IIED claim is therefore meritless.

## CONCLUSION

In light of the above, summary judgment in favor of the County is appropriate.

It is, therefore, **ORDERED** and **ADJUDGED** that the County's Motion for Summary Judgment (ECF No. 44) is **GRANTED**. The Clerk shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 30TH day of December 2016.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*